Bernard Ryan, P. J.
Julian J. Evans, Jr., 25, a good physical male specimen recently honorably discharged from the United States Army, schizophrenic, was duly committed to Gowanda State Hospital. After study and consultation, electro-shock therapy was indicated, prescribed, and the consent of his wife was requested. Consent, at first refused, was ultimately given and treatment was begun. On the second application of electric shock Evans died. No autopsy was performed. The reported cause of death was cardiac arrest.
The widow, as administratrix, sues, charging negligence in general and in several particulars. We find that the decedent had no physical defects which would serve as contra-indications to combined insulin and electro-convulsive therapy; that the administration of the combined insulin and electro-convulsive treatment was in accordance with good medical and psychiatric procedure in use by the medical profession at the time of decedent’s death; that artificial respiration was started within one minute after the convulsion; that oxygen was applied within two to five minutes after the convulsion; that restorative drugs were properly administered and that the attempt to revive the patient was in accordance with good psychiatric and medical procedure.
We find, too, that the standards for electro-shock treatment, promulgated by Gowanda State Hospital for its staff, provided, among other recitals, as follows:
“ (3) Room Facilities and Equipment.
■ip W
“ (e) Medical equipment should be available and in readiness, namely oxygen equipment ”.
We find that the oxygen equipment was not in the room where the shock therapy was administered when the treatment was begun. It was then, and was customarily, located in the office of the supervising nurse on the second floor of the wing of the hospital, whereas the therapy was administered in a corridor of the first floor. However, it has not been established that Evans died because of the lack of oxygen and, although the State’s employee who administered the shock admitted in his testimony that “it would have been good to have oxygen on the *1007 ward ”, he also testified ‘ ‘ anyway, I would have started artificial respiration first ’ ’. In this he was supported by the expert witness Kalinowski who testified that “ artificial respiration is considered more effective than oxygen * * * we do not need oxygen in an ordinary electric shock treatment * * * oxygen is not a stimulant to the heart ”.
Indeed, the strongest testimony in support of claimant’s allegation of negligence in the failure of immediacy of the administration of oxygen is that of the internist Heller who said that in her opinion oxygen11 would have helped a great deal * * * it would have been a helpful adjunct. ’ ’ This is not such a fail-preponderance of evidence as to be the foundation of a finding of negligence in the failure to have oxygen apparatus present when the shock treatment was started.
Nor can we base negligence upon the failure to perform an electro-encephalogram, or an electrocardiogram upon the patient, either prior to the initiation of shock treatments or during the course of them. These omissions were made much of upon the trial but requests to find negligence in respect to them are notably missing from the claimant’s proposed findings. These elements are purely speculative. There was nothing disclosed in the physical examinations of Evans which indicated such procedures. There is nothing in the record of the trial to support a finding of negligence in the omission of their use.
Upon the whole case claimant has failed to establish by a fair preponderance of the evidence a cause of action against the State of New York. Accordingly, the claim must be dismissed. We have considered and marked requests to find submitted by counsel on both sides. Any requests which are marked “ Refused Except as Found ” are so marked because they state the facts incorrectly in whole or in part.
Enter judgment of dismissal.